750 F.2d 405
 40 Fed.R.Serv.2d 1427
 Johnny W. ROBBINS, Plaintiff-Appellant,
v.
Ross MAGGIO, Warden, Louisiana State Penitentiary, et al.,
Defendants-Appellees.
Charles Edward BOLDEN, Plaintiff-Appellant,
v.
Dr. (Name Unknown) UNIVERSITY MEDICAL CENTER, et al.,
Defendants-Appellees.
Kenneth James MIDKIFF, Plaintiff-Appellant,
v.
Joseph C. DUHON, et al., Defendants-Appellees.
 Nos. 83-3240, 83-3429 and 83-4409.
 United States Court of Appeals,
Fifth Circuit.
 Jan. 14, 1985.
 
 Johnny W. Robbins, pro se.
 Bruce V. Schewe (Court-Appointed), New Orleans, La., for plaintiff-appellant.
 J. Marvin Montgomery, Lon E. Roberson, Asst. Attys. Gen., Joseph Erwin Kopsa, Baton Rouge, La., for defendants-appellees.
 Charles Edward Bolden, pro se.
 Frances Baker-Jack (Court-Appointed), Shreveport, La., for plaintiff-appellant.
 McHugh & Guidry, Edmond L. Guidry, III, Daniel G. Guidry, Martinville, La., for Champagne & Dundas.
 Kenneth James Midkiff, pro se.
 Bruce V. Schewe (Court-Appointed), New Orleans, La., for plaintiff-appellant.
 William J. Guste, Atty. Gen., Baton Rouge, La., William L. Goode, Lafayette, La., for defendants-appellees.
 Appeals from the United States District Court for the Western District of Louisiana.
 Before POLITZ, WILLIAMS and GARWOOD, Circuit Judges.
 JERRE S. WILLIAMS, Circuit Judge:
 
 
 1
 We consider three appeals from denials of petitions for appointment of counsel under 28 U.S.C. Sec. 1915(d). The appeal consolidates three independent in forma pauperis civil rights actions brought by prison inmates pursuant to 42 U.S.C. Sec. 1983. Each plaintiff moved the district court for appointment of counsel, but in each case, the motion was denied. Plaintiffs appeal from the denial of these motions. Two issues are presented on appeal: (1) whether the denials of motions to appoint counsel in these cases are appealable orders under 28 U.S.C. Sec. 1291 and if so, (2) whether the decision to deny appointed counsel in any or all of the three cases was appropriate. We first conclude that denial of counsel in a civil rights case is appealable as a final collateral order. Finding jurisdiction, we remand each case on the merits for more detailed findings by the district court as to why appointment of counsel was denied.
 
 FACTS
 
 2
 The first of the three cases in this consolidated appeal was brought in December 1981, by Johnny W. Robbins, an inmate at the Louisiana State Penitentiary. Robbins brought suit under 42 U.S.C. Sec. 1983, alleging that he had been denied competent medical assistance, and that he had been denied an appropriate diet. Robbins' suit was filed in forma pauperis, and referred to a United States magistrate.
 
 
 3
 Robbins moved for appointment of counsel under 28 U.S.C. Sec. 1915(d)[1]. In December 1982, the magistrate denied plaintiff's motion for appointment of counsel. Over a year later, in April 1983, the magistrate again denied a motion for appointment of counsel, stating in a minute entry that "this case is not too complex for presentation by the plaintiff ... [and] plaintiff is capable of properly investigating this case."
 
 
 4
 Thereafter, on April 22, 1983, Robbins filed a notice of appeal stating that review was sought "by the United States Court of Appeals for the Fifth Circuit from the final judgment entered in this action, denying plaintiffs an attorney on the 7th day of April, 1983." On April 26, 1983, four days after Robbins filed the notice of appeal, the district court affixed a handwritten order to Robbins' certificate for appeal, pursuant to Fifth Circuit Rule 24.[2] The order stated:
 
 
 5
 Petitioner seeks to appeal from an order of the magistrate who refused to appoint counsel to referenced petitioner in this Sec. 1983 action. There was no abuse of discretion on the part of the magistrate. The Court finds petitioner is not entitled to counsel at this time in this suit.
 
 
 6
 Robbins did not file a formal notice of appeal from the April 26, 1983, district court order. On May 24, 1983, however, Robbins did file in this Court a document entitled "MOTION TO PROCEED ON APPEAL IN FORMA PAUPERIS." At issue is whether either of the motions filed by Robbins satisfies the requirements for proper notice of appeal from the April 26, 1983, district court order.
 
 
 7
 The second plaintiff, Charles Edward Bolden, filed a pro se complaint under 42 U.S.C. Sec. 1983 in March 1983. Bolden alleged inadequate medical treatment while incarcerated at the St. Martin Parish Jail.[3] Named as defendants were Steve Champagne, Warden of the St. Martin Parish Jail; Earl Dundas, a nurse at the jail; and Dr. Willis Bienvenue, a physician at University Medical Center. In May 1983, Bolden moved for appointment of counsel. The motion was supported by an affidavit stating that "I can not read or write to good and in a case like this I don't no all my right." The district court denied Bolden's motion on June 15, 1983, concluding that "this is not such an exceedingly complex case that Plaintiff will not be able to adequately represent himself." Bolden timely filed this appeal.
 
 
 8
 The third and final plaintiff, Kenneth James Midkiff, filed a Sec. 1983 suit in forma pauperis in May 1983. Midkiff alleged that he had suffered a broken hand while incarcerated at the Lafayette Parish Jail, and that he had not received proper medical attention. In an affidavit attached to the complaint, Midkiff moved for appointment of counsel pursuant to 28 U.S.C. Sec. 1915(d) stating that "I will not be able to file any other papers, and do not have law books to look up case law." Midkiff has a high school education.
 
 
 9
 In June 1983, the district court denied Midkiff's motion for appointment of counsel, concluding that the case was not overly complex. Midkiff filed timely notice of appeal from the district court order on June 23, 1983. On that same day, Midkiff filed a second federal lawsuit, based on the same facts as the first suit[4], against Joseph C. Duhon, Warden of the Lafayette Parish Jail, and Brett Pryor, jailer. Midkiff simultaneously made a motion for appointment of counsel, alleging that the case was serious and that "[I] have no law understand what so ever."
 
 
 10
 On July 6, 1983, the magistrate consolidated Midkiff's two suits, and denied Midkiff's motion for appointment of counsel. Midkiff timely filed this appeal.
 
 I. NOTICE OF APPEAL
 
 11
 We must first decide whether the appeal of appellant Robbins is timely. Robbins failed to file a document constituting a timely notice of appeal pursuant to Rule 4(a) of the Federal Rules of Appellate Procedure. Rule 4(a) requires that a notice of appeal "be filed with the clerk of the district court within 30 days after the date of the entry of the judgment or order appealed from." The time limitation for filing a notice of appeal is jurisdictional and lack of a timely notice mandates dismissal of an appeal. Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 103 S.Ct. 400, 403, 74 L.Ed.2d 225 (1982). Williams v. Treen, 671 F.2d 892, 895 (5th Cir.1982), cert. denied, 459 U.S. 1126, 103 S.Ct. 762, 74 L.Ed.2d 977 (1983). We do accept the filing of certain documents other than a formal notice of appeal, if filed within the thirty day limit of Rule 4(a), as the substantial equivalent of a notice of appeal.
 
 
 12
 This Court has repeatedly held that a request to proceed in forma pauperis satisfies the filing requirement for notice of appeal. See Causey v. Civiletti, 621 F.2d 691 (5th Cir.1980); Cobb v. Lewis, 488 F.2d 41 (5th Cir.1974); Tillman v. United States, 268 F.2d 422 (5th Cir.1959). Plaintiff Robbins' motion to proceed in forma pauperis was filed within the thirty day period following the district court's denial of appointment of counsel, and as such, we accept it as the substantial equivalent of a timely notice of appeal.[5]
 
 II. JURISDICTION
 
 13
 We next address the question of our jurisdiction over these appeals. Section 1291 of 28 U.S.C. provides, "[t]he courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States ... except where a direct review may be had in the Supreme Court." (emphasis added). A final decision for purposes of Sec. 1291 has been defined as "a decision by the District Court that 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' " Coopers & Lybrand v. Livesay, 437 U.S. 463, 467, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978) (quoting Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945)). Appellees argue that an order denying counsel does not prevent a litigant from presenting a pro se claim to the court. Since such an order does not end the litigation on the merits, it cannot be considered a "final decision." Accordingly, appellees argue that this Court has no jurisdiction to consider these appeals.
 
 
 14
 In response, appellants contend that even if the orders denying counsel do not constitute "final decisions," they nevertheless are appealable under the "collateral order" doctrine of Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949). The issue in Cohen was the appealability of a district court order in a stockholder's derivative suit, denying a defendant's motion that the plaintiff be required to post security for costs of litigation. Although that order did not technically end the litigation on the merits, the Court held that it nevertheless was immediately appealable. The Court reasoned that an order denying security for costs would be unreviewable if review was postponed until final disposition of the merits. After disposition of the case on the merits, any right plaintiff might have to security would be lost. Thus, the Court created an exception to the final decision requirement. In Cohen the court explained that this "collateral order" exception is applicable when the district court order falls within "that small class which finally determine[s] claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." Id. at 546, 69 S.Ct. at 1225.
 
 
 15
 In Caston v. Sears, Roebuck & Co., Hattiesburg, Miss., 556 F.2d 1305 (5th Cir.1977), this Court concluded with "little hesitation" that a plaintiff who was allowed to file a Title VII suit in forma pauperis but was then denied appointed counsel could immediately appeal the denial of his application for counsel. We stated in Caston:
 
 
 16
 Obviously, the refusal to appoint an attorney is collateral to the merits of the case. The decision to deny the assistance of an appointed attorney to a layman unschooled in the law in an area as complicated as the civil rights field is truly too important to be deferred until a resolution on the merits can be had. Such an individual likely has little hope of successfully prosecuting his case to a final resolution on the merits. Thus, we hold that the denial of an application to appoint counsel pursuant to Section 706(f) of Title VII is immediately appealable pursuant to 28 U.S.C. Sec. 1291.
 
 
 17
 Id. at 1308.
 
 
 18
 Appellees acknowledge the precedent established in this Circuit by Caston, and do not attempt to distinguish the present case on its facts.[6] Instead, appellees argue that since our decision in Caston, the collateral order doctrine has been constricted and that under the later interpretations a district court order denying appointment of counsel is not appealable prior to disposition on the merits. Appellees refer to Coopers & Lybrand v. Livesay, 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978), Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981), and Flanagan v. United States, --- U.S. ----, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984), all of which were decided by the Supreme Court subsequent to this Court's decision in Caston.
 
 
 19
 Appellees are correct in their assertion that the Cohen doctrine has been restated with significance since our decision in Caston. One year after Caston, in Coopers & Lybrand, the Supreme Court dealt with the appealability of a district court order denying a motion to certify a case as a class action. The Court concluded that such an order was not final nor collateral and thus not appealable prior to a determination of the case on the merits. In order to qualify as collateral, the Court stated that an order must (1) "conclusively determine the disputed question", (2) "resolve an important issue completely separate from the merits of the action", and (3) "be effectively unreviewable on appeal from a final judgment." Id. 437 U.S. at 468, 98 S.Ct. at 2458. The first two Coopers & Lybrand elements merely track the requirements established in Cohen. The third condition, however--that the order be effectively unreviewable on appeal from a final judgment--was not stated as part of the original Cohen test.
 
 
 20
 Applying the Coopers & Lybrand test three years later in Firestone, the Court held that an order denying a motion to disqualify counsel in a civil case was not appealable as a collateral order because the third Coopers & Lybrand element had not been met. An order denying disqualification of counsel is reviewable as part of a final judgment, and it was found not to differ significantly from other interlocutory orders reviewable only after final judgment. Id. 449 U.S. at 376, 101 S.Ct. at 674.
 
 
 21
 In its most recent pronouncement on the appealability of interlocutory orders, the Supreme Court held that the granting of pretrial motions to disqualify defense counsel in criminal prosecutions are not immediately appealable. Flanagan v. United States, --- U.S. ----, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984). The Court reasoned that the Sixth Amendment's guarantee of a speedy trial required utmost strictness in the interpretation of the collateral order exception to the final judgment rule in criminal cases. Id. 104 S.Ct. at 1055.
 
 
 22
 The decision in Flanagan turned on an analysis of the second Coopers & Lybrand element. The Court held that an order granting disqualification of counsel was not an issue sufficiently separable from the merits of the action to justify immediate appeal. This was so because prejudice to a criminal defendant is not presumed upon disqualification of counsel as it would be when a criminal defendant is denied an asserted right such as appointment of counsel. The Court concluded that a criminal defendant's rights are only violated if it can be demonstrated that a disqualification order actually resulted in prejudice to the defendant. Because actual prejudice cannot be fairly assessed until after trial, an order granting disqualification in a criminal case is not sufficiently separable from the merits of the case. Thus, the second Coopers & Lybrand element was found to be unsatisfied. Id. 104 S.Ct. at 1056.
 
 
 23
 Flanagan narrowly applies to orders granting disqualification of counsel in criminal cases. This Court has recently considered whether orders granting disqualification in civil cases would be directly appealable. We held that orders granting disqualification in civil cases are not appealable under the collateral order exception because such orders do not "lend themselves more readily to consideration apart from the merits of the litigation than such orders in criminal cases." Gibbs v. Paluk, 742 F.2d 181, 186 (5th Cir.1984). The Court felt constrained by Flanagan to find that the second Coopers & Lybrand element was not satisfied because a disqualification order was of such nature that fair assessment of prejudice in the civil context, as in the criminal context, could only be made after completion of the trial. Id. at 185.[7]
 
 
 24
 The question presented in these appeals while somewhat analogous differs as to its critical elements from the issue of the appealability of disqualification orders. Appellees urge that the analogy is close and controlling. It is their position that in light of the recent Supreme Court decisions, Caston is no longer binding. They contend that an order denying appointment of counsel in civil rights cases does not meet the Coopers & Lybrand unreviewability test because any damage created by an erroneous order denying counsel can be remedied on appeal simply by ordering a new trial with appointed counsel. Appellees also question the separability of the appealed order from the underlying merits in view of the Supreme Court's decision in Flanagan. They support their arguments by pointing out that other circuit courts have addressed this same issue after Coopers & Lybrand and have ruled against appealability.[8] During the same period, however, other circuits have ruled that orders denying counsel in civil rights cases are appealable as collateral orders.[9]
 
 
 25
 The Caston decision was implicitly reaffirmed by this Court in White v. United States Pipe & Foundry Co., 646 F.2d 203 (5th Cir.1981). The Court did not address the jurisdictional question of appealability of orders denying appointment of counsel but focused instead on the merits of the district court's grounds for denying the plaintiffs' applications. White was decided subsequent to Coopers & Lybrand. We must, therefore, recognize that this Court decided that the result reached in Caston had not been altered by the Coopers & Lybrand redefinition of the Cohen test.[10] Here we turn our attention specifically to the appealability issue, and we confirm the result in White.
 
 
 26
 For an interlocutory order to be appealable immediately, Coopers & Lybrand requires that the order (1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment. We conclude that all three elements are satisfied by an order denying appointment of counsel in civil rights cases and that the order is subject to immediate appeal.
 
 
 27
 The first Coopers & Lybrand element is met because the order is one that conclusively determines the question of appointment of counsel. If a defendant after denial of the motion chooses to go forward with his claim, he must do so without the assistance of appointed counsel.
 
 
 28
 The second requirement raises a closer question. Can an order denying counsel be considered separable from and collateral to the underlying merits of the litigation after Flanagan's elaboration of the second Coopers & Lybrand element? This Court stated unequivocally in Caston that "[o]bviously, the refusal to appoint an attorney is collateral to the merits of the case." Id. at 1308. We do not find that Flanagan in any way alters this conclusion.
 
 
 29
 Generally speaking, no right to counsel exists in Sec. 1983 actions. Hardwick v. Ault, 517 F.2d 295, 298 (5th Cir.1975). However, this court has recognized that appointment of counsel should be made as authorized by 28 U.S.C. Sec. 1915(d) where "exceptional circumstances" are present. Branch v. Cole, 686 F.2d 264, 266 (5th Cir.1982); Schack v. Florida, 391 F.2d 593 (5th Cir.), cert. denied, 392 U.S. 916, 88 S.Ct. 2080, 20 L.Ed.2d 1376 (1968). Although no comprehensive definition of "exceptional circumstances" is practical, "the existence of such circumstances will turn on the quality of two basic factors--the type and complexity of the case, and the abilities of the individual bringing it". (footnote omitted). Branch, 686 F.2d at 266.
 
 
 30
 In Branch, a plaintiff in a post-trial appeal challenged the denial of appointment of counsel by the district court in a state prisoner's civil rights action. This Court held that in considering whether exceptional circumstances existed, the Court could only look at facts known by the district court prior to trial. Hindsight gained by observing the litigant's actual performance was an inappropriate consideration. Id. at 266. Branch, therefore, instructs us to review orders denying counsel in light of facts before the district court when the denial of appointment of counsel was ordered, and not in relation to what ensued at trial. This is in complete contrast to orders conveying disqualification of counsel. See Firestone and Flanagan, supra, where the evaluation is based upon prejudice at trial. The factors examined in reviewing an order denying appointment of counsel are, therefore, separable from the merits of the case. This fact meets the Caston requirement that an order to be appealable must be viewed as separate from the merits of the underlying litigation. Thus, we find that the second Coopers & Lybrand element has been satisfied.
 
 
 31
 Finally, we consider whether an order denying appointment of counsel will be effectively unreviewable on appeal from a final judgment. In Caston, this Court expressed the view that a layman unschooled in the law in the area of civil rights who had been inappropriately denied assistance of appointed counsel had little hope of successfully prosecuting his case to final resolution on the merits. Id. at 1308. This statement is no less true after Coopers & Lybrand. Indeed, there remains a great risk that a civil rights plaintiff may abandon a claim or accept an unreasonable settlement in light of his own perceived inability to proceed with the merits of his case,[11] resulting in the loss of vital civil rights claims.
 
 
 32
 The holdings of Firestone and Gibbs dealing with disqualification of counsel do not affect our determination that orders denying appointment of counsel are effectively unreviewable because denial of appointed counsel involves different considerations. As pointed out earlier, the issue in orders involving disqualification is prejudice during trial. Disqualification orders do not result in the inability of litigants to advance through their trial and to raise possible issues of the appropriateness of the disqualification order on appeal. A litigant who can afford counsel may erroneously be denied his choice of counsel when a disqualification motion is granted, but he is still able to proceed with other retained counsel. This is assurance that the opportunity for meaningful review will not perish. But when a litigant unable to afford counsel and unable to present his case himself is forced to proceed pro se, there is little guarantee that a civil rights action will be successfully prosecuted to appeal so that the denial of counsel may be reviewed.
 
 
 33
 We emphasize that the application of the third Coopers & Lybrand requirement is not whether a claim becomes jurisdictionally unreviewable, but whether it becomes effectively unreviewable. It is technically true, as appellees argue, that a litigant denied appointment of counsel may proceed pro se. However, it is the likelihood that a litigant will not be able effectively to prosecute his claim or to appeal that determines the reviewability of that claim rather than the theoretical existence of the right to proceed with a claim. The potential loss of a claim by a pro se civil rights litigant involves an "asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial." Firestone, 101 S.Ct. at 675 (quoting United States v. MacDonald, 435 U.S. 850, 860, 98 S.Ct. 1547, 1552, 56 L.Ed.2d 18 (1978)). Thus, we find that the third Coopers & Lybrand element is satisfied.
 
 
 34
 We conclude, therefore, that orders denying appointment of counsel to litigants who have clearly demonstrated inability to afford counsel continue to fall into the class of orders envisaged by Cohen that are directly appealable as interlocutory orders.
 
 III. MERITS
 
 35
 Having concluded that an order denying appointment of counsel in a civil rights action is directly appealable, we turn to the question of whether in any of these consolidated cases such denial by the district court was an abuse of discretion. We find it necessary to remand all three cases before us because we cannot determine from the records whether the district courts exercised reasoned and well-informed discretion in denying the motions. In all three cases, the district courts made cursory findings that the cases lacked the complexity necessary to warrant appointment of counsel and that plaintiffs possessed the ability adequately to represent themselves. Although complexity of the issues and ability to represent themselves are appropriate factors in reviewing requests for appointment of counsel, we cannot review the merits without more specific findings by the district courts as to why counsel was denied in each of these cases.
 
 
 36
 REVERSED AND REMANDED.
 
 
 37
 GARWOOD, Circuit Judge, dissenting.
 
 
 38
 Though the majority opinion treats the issue fairly and comprehensively, stating as persuasive a case for appealability as can be made, I nevertheless must respectfully dissent from its holding that these orders denying appointment of counsel are appealable under the "collateral order" exception enunciated in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).
 
 
 39
 The majority places principal reliance on our decisions in Caston v. Sears, Roebuck & Co., 556 F.2d 1305 (5th Cir.1977), and White v. United States Pipe & Foundry Co., 646 F.2d 203 (5th Cir.1981).
 
 
 40
 As the majority recognizes, Caston predates the Supreme Court's decisions in Coopers & Lybrand v. Livesay, 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978); Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981); and Flanagan v. United States, --- U.S. ----, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984), as well as our own decision in Gibbs v. Paluk, 742 F.2d 181 (5th Cir.1984). The Firestone decision caused the Seventh Circuit, in Randle v. Victor Welding Supply Co., 664 F.2d 1064, 1066 (7th Cir.1981), to overrule its prior decision in Jones v. WFYR Radio/RKO General, 626 F.2d 576, 576 n. * (7th Cir.1980), which, in reliance on Caston, had held orders such as these to be appealable. The Tenth Circuit, relying principally on Coopers and Firestone, has declined to follow our Caston decision. Cotner v. Mason, 657 F.2d 1390 (10th Cir.1981). The First Circuit, in Appleby v. Meachum, 696 F.2d 145 (1st Cir.1983), approved both Randle and Cotner.
 
 
 41
 Post-Flanagan, only two Circuits have heretofore spoken to the precise question. In Smith-Bey v. Petsock, 741 F.2d 22 (3d Cir.1984), the Third Circuit felt compelled by Flanagan to reconsider and overrule its earlier decision in Ray v. Robinson, 640 F.2d 474 (3d Cir.1981), which had held appealable orders denying appointment of counsel under 28 U.S.C. Sec. 1915(d), relying in part on Caston. The Smith-Bey Court regarded Flanagan as being "a fortiori" on that issue. 741 F.2d at 25. A contrary position was taken by the Sixth Circuit in Henry v. City of Detroit Manpower Department, 739 F.2d 1109 (6th Cir.1984). However, the Henry opinion regarded Flanagan as being confined to criminal cases, id. at 1116, and hence felt free to rely on prior decisions holding disqualification of counsel in civil cases to be immediately appealable. Id. at 1117-18. We have already rejected this rationale in Gibbs, where the panel felt compelled by Flanagan to depart from several prior decisions of this Court extending Cohen appealability to civil case disqualification of counsel orders. 742 F.2d at 183 n. 5.[1]
 
 
 42
 In my opinion, the intervening decisions in Coopers, Firestone, Flanagan and Gibbs have cut the ground from under Caston and this panel should no longer follow it, just as the Gibbs panel felt compelled by Flanagan to depart from our prior decisions dealing with disqualification orders in civil cases. White does not stand in the way of this result, for it does not even address the jurisdictional issue, and is in any event pre-Flanagan.
 
 
 43
 To apply the test for Cohen appealability to these orders, some initial consideration may appropriately be given to the criteria under which such counsel appointment decisions are made and reviewed.
 
 
 44
 We have stated that "generally speaking no right to counsel exists in Sec. 1983 actions." Hardwick v. Ault, 517 F.2d 295, 298 (5th Cir.1975). The "no right" language of Hardwick, however, "is subject to limitation when exceptional circumstances exist." Slavin v. Curry, 690 F.2d 446, 448 (5th Cir.1982). As this is gauged by "the type and complexity of the case, and the abilities of the individuals bringing it," Branch v. Cole, 686 F.2d 264, 266 (5th Cir.1982), it necessarily "depends upon the facts in each case." Slavin at 448. "Consequently, the decision whether to appoint counsel properly lies within the sound discretion of the district court." Id. In Caston we "reject[ed] the notion that the merits of the claim may not be considered in ruling upon an application for counsel." 556 F.2d at 1309. Although it is not entirely clear from the opinion, it appears that in Branch we adopted a rule of automatic reversal for instances where a requested appointment of counsel was erroneously denied. 686 F.2d at 267. We also stated in Branch that the propriety of the trial court's action on a given request for counsel would be reviewed only on the basis of the facts known to the trial court when the challenged ruling was made. Id. at 266.
 
 
 45
 Three or four characteristics have been authoritatively identified as ones each of which an order not finally disposing of the case on the merits must possess if it is to have Cohen appealability. Three are stated in Coopers as follows:
 
 
 46
 "... the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." 98 S.Ct. at 2458.
 
 
 47
 In Nixon v. Fitzgerald, 457 U.S. 731, 102 S.Ct. 2690, 2698, 73 L.Ed.2d 349 (1982), the Court noted that "[a]s an additional requirement, Cohen established that a collateral appeal of an interlocutory order must 'present[ ] a serious and unsettled question.' 337 U.S. at 547, 69 S.Ct. at 1226."
 
 
 48
 Determination of whether an order meets these tests must be made in light of the rule that "the Cohen doctrine 'should be strictly construed.' " Spiess v. C. Itoh & Co. (America), Inc., 725 F.2d 970, 975 (5th Cir.1984) (quoting Arango v. Guzman Travel Advisors Corp., 621 F.2d 1371, 1378 n. 8 (5th Cir.1980)).
 
 
 49
 In my opinion, the present orders do not meet the first and fourth Cohen requirements and are also deficient in respect at least to one, and perhaps both, of the second and third requirements.
 
 
 50
 The first requirement, stated in Coopers as "must conclusively determine the disputed question," 98 S.Ct. at 2458, was restated in Firestone as "the challenged order must constitute 'a complete, formal and, in the trial court, final rejection,' Abney v. United States, 431 U.S. at 659, 97 S.Ct. [2034] at 2040 [52 L.Ed.2d 651] [1977], of a claimed right ...." Firestone, 101 S.Ct. at 675. The Caston panel did not address this requirement, and the majority opinion here does so only in a conclusory manner. In Coopers the Court held that an order denying class certification failed to meet the first requirement because "such an order is subject to revision in the District Court." 98 S.Ct. at 2458. That is plainly the situation here. In each of the present appeals the reason given below for denial of counsel was that the case was not overly complex or beyond the plaintiff's capacity to represent himself. Should later developments indicate a greater complexity or a lesser capacity, the district court might well appoint counsel. For example, in one of the appeals (Robbins, our No. 83-3240), the district court's order states "[t]he court finds petitioner is not entitled to counsel at this time in this suit" (emphasis added). Such tentativeness is inherent in the complexity/capacity component of the standard for counsel appointment, as well as in "the merits of the claim" component of that standard. Of course, the district court's order finally denies counsel for at least a temporary period, but that is not the kind of final rejection in the trial court which is envisaged by the first Cohen factor, else that factor would be completely meaningless. This is the obverse of the situation referred to in Moses H. Cone Memorial Hospital v. Mercury Construction Corporation, 460 U.S. 1, 103 S.Ct. 927, 935 n. 14, 74 L.Ed.2d 765 (1983) ("virtually all interlocutory orders may be altered or amended before final judgment" and so the first Coopers factor "does not reach all pretrial orders that are formally subject to revision, but only those as to which some revision might reasonably be expected in the ordinary course of litigation."). As the Appleby Court stated:
 
 
 51
 "We do not think that a denial of appointed counsel at the outset necessarily 'conclusively determine[s] the disputed question ....' [Coopers,] 437 U.S. at 468, 98 S.Ct. [2454] at 2457. We would expect the district court to leave the order 'subject to revision,' id. 437 U.S. at 469, 98 S.Ct. at 2458, as, for example, where a possibly meritorious case appears to be developing." 696 F.2d at 147.[2]
 
 
 52
 See also Henry, 739 F.2d at 1121 (Bailey Brown, Senior Circuit Judge, dissenting) ("... the very nature of the question suggests that the determination should not be deemed conclusive for purposes of appeal.").
 
 
 53
 The second Cohen factor as articulated in Coopers is that the order "resolve an important issue completely separate from the merits of the action." Coopers held that a class action determination did not meet this test because such a ruling "generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.' " 98 S.Ct. at 2458. Since the propriety of declining to appoint counsel depends in such large part on how complex the facts of the particular substantive claim are and on the degree of arguable merit which the claim has, it would appear that the "completely separate from the merits" test as articulated in Coopers is not met by the present orders. See Appleby, 696 F.2d at 147; Bradshaw v. Zoological Society of San Diego, 662 F.2d 1301, 1332 (9th Cir.1981) (J. Clifford Wallace, Circuit Judge, dissenting).[3] However, in Flanagan the Court stated that the second condition for Cohen appealability would not be met in respect to an order disqualifying defense counsel in a criminal case if the "asserted right is one requiring prejudice to the defense for its violation." 104 S.Ct. at 1057. A possible negative inference from this language is that denial of counsel does meet the second appealability condition if redress for its violation does not require a showing of prejudice in the outcome of the case. If, as Branch indicates, we do not require a showing of prejudice in order to reverse for an erroneous denial of counsel, then it is arguable from this language in Flanagan that the second condition for appealability is met. Otherwise, however, it is clear that the second condition is not met.
 
 
 54
 This brings us to the third condition, that the order "be effectively unreviewable on appeal from a final judgment." Coopers, 98 S.Ct. at 2458. Firestone restated this condition as one which was met only " 'where denial of immediate review would render impossible any review whatsoever.' " 101 S.Ct. at 675. Flanagan clearly holds that this condition is not met if review of the order following trial on the merits is under the presumed prejudice standard:
 
 
 55
 "In sum, as petitioners concede, if establishing a violation of their asserted right requires no showing of prejudice to their defense, a pretrial order violating the right does not meet the third condition for coverage by the collateral order exception: it is not 'effectively unreviewable on appeal from a final judgment.' " 104 S.Ct. at 1056.
 
 
 56
 The majority suggests that the party denied counsel will for that reason be unable to perfect an appeal or will be discouraged from doing so. I disagree. A party capable of perfecting pro se an appeal from an order denying counsel is likewise capable of so perfecting an appeal after judgment on the merits. As to discouragement, the Court in Coopers said "we hold that the fact that an interlocutory order may induce a party to abandon his claim before final judgment is not a sufficient reason for considering it a 'final decision' within the meaning of Sec. 1291." 98 S.Ct. at 2462 (footnote omitted; emphasis added). See also Firestone, 101 S.Ct. at 675-76 & n. 13. Certainly, the large number of pro se tried cases where pro se appeals have been perfected in this Court should suffice to demonstrate that the denial of appointment of counsel does not effectively prevent, or ultimately wholly discourage, such cases from being actually tried and appealed. See, e.g., Appleby, 696 F.2d at 146 ("... we are unpersuaded by arguments to the effect that pro se plaintiffs are such a frail class of litigants that denial of appointed counsel at the outset effectively terminates the suit ...."). See also Branch; Slavin.
 
 
 57
 In sum, Flanagan makes clear that if failure to appoint counsel is tested on review by a prejudice standard, then it does not meet the second condition for Cohen appealability, while if it is tested on review by a presumed prejudice standard, then it does not meet the third condition. In neither event is the order appealable before final judgment. Flanagan, 104 S.Ct. at 1056-57.
 
 
 58
 The fourth condition for Cohen appealability is that the challenged order presents a serious and unsettled question. Here, the respective district courts entered the challenged orders under no apparent misapprehension of the correct and well settled legal criteria, and review of the propriety of the denial hence presents only a question of whether, in light of all the particular facts in each discrete case, the district court abused its discretion. Cohen itself indicates that review of such an order should await final judgment. 69 S.Ct. at 1266.
 
 
 59
 Holding orders of this character appealable before final judgment represents in my view a major and serious invasion of the values sought to be promoted by the final judgment rule. It tends to undermine "the respect due trial judges by" materially increasing "appellate-court interference with the numerous decisions they must make in the pre-judgment stages of litigation." Flanagan, 104 S.Ct. at 1054. It makes highly probable multiple appeals in every in forma pauperis civil case in which counsel is requested and denied. Section 1915(d), the only basis for appointment of counsel in these actions, is not confined to civil rights cases, but extends to all civil cases prosecuted in forma pauperis. See Henry, 739 F.2d at 1124-25 (Bailey Brown, Senior Circuit Judge, dissenting). If counsel is requested on filing the action and then denied, there will be an appeal. Though there is an affirmance,[4] if the request is renewed and again denied when an amended pleading is filed or following discovery or rulings on motions to dismiss or the like, then there will still be another appeal. Perhaps then we will decide to remand, as we do here, because we regard the trial court's order as insufficiently specific in its reasons for denial.[5] If denial again follows, there is yet another appeal, the third prior to trial.[6] Such a prospect is the very kind of thing the final judgment rule is designed to prevent.
 
 
 60
 For these reasons, I respectfully dissent.
 
 
 
 [1]
 28 U.S.C. Sec. 1915(d) authorizes a trial court to appoint counsel for indigent civil litigants
 
 
 [2]
 At that time, Fifth Circuit Rule 24 was Rule 8
 
 
 [3]
 Specifically, Bolden complained that he was suffering from a rectal infection which was aggravated by an absence of prescribed treatment and medicine. Bolden also alleged negligence on the part of the nurse and physician
 
 
 [4]
 Specifically, Midkiff alleged that he was "forced to lay down on [his] stomach and hand cuffed behind [his] back with leg shackles run from [his] hands to [his] legs, and in which cut off the circulation in [his] hands and left [him] in pain for hours." He further alleged a lack of medical care
 
 
 [5]
 We need not decide here whether the earlier document filed in the district court requesting review by this court would be the substantial equivalent of a timely notice of appeal
 
 
 [6]
 We take note that Caston involved an action filed under Title VII, in contrast with the three cases consolidated here, all of which were filed pursuant to 42 U.S.C. Sec. 1983. For purposes of the issue of appealability, however, we find no significant legal distinction between a Title VII case and a Sec. 1983 case
 
 
 [7]
 Two other circuits have held to the contrary, see Interco Systems, Inc. v. Omni Corporate Services, Inc., 733 F.2d 253 (2nd Cir.1984), Koller v. Richardson-Merrell, Inc., 737 F.2d 1038 (D.C.Cir.1984)
 
 
 [8]
 The Second Circuit had held against appealability in Miller v. Pleasure, 425 F.2d 1205 (2nd Cir.), cert. denied, 400 U.S. 880, 91 S.Ct. 123, 27 L.Ed.2d 117 (1970). After Coopers & Lybrand additional circuits have held that an order denying appointment of counsel is not immediately appealable because such an order is not effectively unreviewable. See Appleby v. Meachum, 696 F.2d 145 (1st Cir.1983); Randle v. Victor Welding Supply Co., 664 F.2d 1064 (7th Cir.1981) (overruling a prior decision in Jones v. WFYR Radio/RKO General, 626 F.2d 576 (7th Cir.1980)); Cotner v. Mason, 657 F.2d 1390 (10th Cir.1981). In a post-Flanagan case, the Third Circuit held in Smith-Bey v. Petsock, 741 F.2d 22 (3d Cir.1984), that orders denying appointment of counsel were not subject to immediate appeal because such orders were not sufficiently separable from the underlying merits, overruling its previous holding in Ray v. Robinson, 640 F.2d 474 (3d Cir.1981)
 
 
 [9]
 The Eighth Circuit decided in three pre-Flanagan cases that orders denying appointment of counsel in civil rights cases were immediately appealable. Slaughter v. City of Maplewood, 731 F.2d 587 (8th Cir.1984), Hudak v. Curators of University of Missouri, 586 F.2d 105 (8th Cir.1978), cert. denied, 440 U.S. 985, 99 S.Ct. 1799, 60 L.Ed.2d 247 (1979) (denial of appointment of counsel in an employment discrimination suit was immediately appealable under Title VII and 42 U.S.C. 1981 and 1982), and Peterson v. Nadler, 452 F.2d 754 (8th Cir.1971) (denial of appointment of counsel directly appealable in an action for a fraudulent conversion of an indigent's property by his former attorney). In Henry v. City of Detroit Manpower, 739 F.2d 1109 (6th Cir.1984), the Sixth Circuit held, post-Flanagan, that interlocutory orders denying appointment of counsel could be immediately appealed. The Ninth Circuit reached a similar conclusion in a Title VII case in Bradshaw v. Zoological Society, 662 F.2d 1301 (9th Cir.1981)
 
 
 [10]
 The Court in White noted that the district court explained to the plaintiffs in that case that its denial of their applications for counsel could be immediately appealed. Id. at 205 note 4
 
 
 [11]
 We note, as did the Ninth Circuit in Bradshaw v. Zoological Society of San Diego, 662 F.2d 1301, 1310 n. 22 (9th Cir.1981), that abandoning a claim in a civil rights case because of a denial of appointed counsel must be distinguished from abandoning a claim because of failure to certify a class, which was the issue in Coopers & Lybrand, 98 S.Ct. at 2458-62. In Coopers & Lybrand, the Supreme Court discussed the so called "death knell" doctrine as a possible justification of appealability of a class certification claim. The Court held that the doctrine did not justify appellate jurisdiction for interlocutory orders denying class certification. Under the "death knell" doctrine, some courts have allowed immediate appeal of orders in certain cases on the theory that denial of direct appeal would effectively preclude review of any of the issues in those cases, not just of the collateral issues from which the appeals were taken. Gillespie v. United States Steel Corporation, 379 U.S. 148, 152-55, 85 S.Ct. 308, 311-12, 13 L.Ed.2d 199 (1964); 15 Wright, Miller & Cooper, Federal Practice and Procedure Sec. 3912 (1976). As this Court noted, "neither the language nor holding of [Coopers & Lybrand ], or the views of the commentators as to its meaning," support an argument that the decision overruled the death knell doctrine in contexts other than denial of class certification. McKnight v. Blanchard, 667 F.2d 477, 479 (5th Cir.1982)
 
 
 [1]
 Post-Firestone and pre-Flanagan, the Eighth and Ninth Circuits held orders denying appointment of counsel in civil cases were immediately appealable. Slaughter v. City of Maplewood, 731 F.2d 587 (8th Cir.1984); Bradshaw v. Zoological Society of San Diego, 662 F.2d 1301 (9th Cir.1981). The majority opinion in Bradshaw relied in part on the then rule that disqualification of counsel orders were immediately appealable in civil cases. Id. at 1313. It also relied, id. at 1305 & n. 11, on what it regarded as the unanimous rule, at least in Title VII cases; however, in two instances later decisions have overruled those relied on by Bradshaw, see Smith-Bey; Randle, and in another the decision relied on had already been overruled. See Miller v. Pleasure, 425 F.2d 1205 (2d Cir.), cert. denied, 400 U.S. 880, 91 S.Ct. 123, 27 L.Ed.2d 117 (1970), overruling Miller v. Pleasure, 296 F.2d 283 (2d Cir.1961), cert. denied, 370 U.S. 964, 82 S.Ct. 1592, 8 L.Ed.2d 830 (1962)
 
 
 [2]
 In this respect, the present appeals are to be contrasted to those where "[t]he district court conclusively determined that question by the decision manifesting its belief that it had no authority to appoint counsel in this type of case." Ray v. Robinson, 640 F.2d 474, 477 (3d Cir.1981). The Bradshaw court considered that it was faced with a similarly final order, as the denial of counsel there was predicated on the assumption that appointment of counsel was inappropriate in any Title VII case since if the case had merit retained counsel could be obtained because of the attorney fee provisions of Title VII. 662 F.2d 1301 at 1319. Admittedly, Firestone points in the other direction. 101 S.Ct. at 674. But there the character of right at issue (not to have one's opponent represented by counsel with conflicting interests) was different than that here, and the district court's order was on its face definitive and purported to govern continued representation throughout the proceeding. Id. 101 S.Ct. at 671-72. It was not an order "as to which some revision might reasonably be expected in the ordinary course" of proceedings in the trial court. Cone, 103 S.Ct. at 935 n. 14
 
 
 [3]
 Further, counsel is not appointed in cases such as these for any reason other than to help the party for whom the appointment is made prevail on the merits of his case. The appointment has no significance independent of that merits-related purpose. By contrast, the protection to be afforded by the security at issue in Cohen would in no sense be rendered superfluous if the party who requested it were to ultimately prevail on the merits. Similarly, the protections such as those afforded by the Double Jeopardy Clause, the Speech and Debate Clause and the doctrine of executive immunity are designed, in part at least, to shield their beneficiaries from the litigation process, in addition to shielding them from adverse judgments, and are in that sense separate from the merits of the underlying cause of action. See Flanagan, 104 S.Ct. at 1055; Spiess, 725 F.2d at 974-75
 
 
 [4]
 If we mean it when we say that the appointment decision is committed to the trial court's discretion, then it follows that in the vast majority of instances we will not ultimately direct an appointment decision different than that made by the trial court. This is certainly in keeping with the source of court authority in these instances, namely, section 1915(d) which relevantly provides only that "[t]he court may request an attorney to represent any such person [allowed to proceed in forma pauperis ] unable to employ counsel." (Emphasis added.)
 
 
 [5]
 Such remands are not rare. See, e.g., Caston
 
 
 [6]
 Indeed, the plaintiff may eventually fully prevail at trial, rendering all three pretrial appeals meaningless